JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
SOPHIA REBECCA-MARIE (SBN 354972)
sophia@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.S.,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); JUAN CARLOS OSORIO, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br>**1. Sexual Abuse;**<br>**2. Gender Violence;**<br>**3. Sexual Battery;**<br>**4. Intentional Infliction of Emotional Distress;**<br>**5. Negligent Infliction of Emotional Distress;**<br>**6. Battery;**<br>**7. Failure to Protect; and**<br>**8. Negligence**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## INTRODUCTION

1. Beginning in approximately January of 2023 Defendant JUAN CARLOS OSORIO ("OSORIO"), a correctional officer at Federal Correctional Institution – Victorville ("FCI Victorville") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted and harassed Plaintiff J.S. ("Plaintiff"), a medium-security inmate, in violation of federal and state law.

2. Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice ("DOJ") promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3. Defendant JUAN CARLOS OSORIO ("OSORIO"), an agent and employee of FCI Victorville, repeatedly subjected Plaintiff to sexual abuse and harassment. In doing so, Defendants violated Plaintiff's rights under the U.S. Constitution and California law. Defendants further committed multiple common law torts against Plaintiff, as recognized under California law.

4. UNITED STATES and others inadequately supervised and trained the prison's correctional officers and other employees which was a substantial factor in causing Plaintiff's abuse.

5. As a result of all Defendants' actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

6. Plaintiff brings this civil action and asserts claims: (1) against OSORIO, and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause; (2) against OSORIO pursuant to various California common law torts and statutes; and (3) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims committed by Defendants arising under California common law committed within the course and scope of their federal office or employment.

7. For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

8. Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

9. The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because each Defendant is a citizen of California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Victorville, located at 13777 Air Expy, Victorville, California 92394.

## PARTIES

11. Plaintiff is an individual and a citizen of California, where she is domiciled. During the relevant period, Plaintiff was incarcerated at FCI Victorville in Victorville, California.

12. Upon information and belief, Defendant OSORIO is an individual and citizen of California, During the relevant period, OSORIO worked as correctional officer ("CO") at FCI Victorville in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, OSORIO was acting within the scope of his official employment, or with the BOP's permission and consent.

13. Defendant UNITED STATES is a governmental entity. During the

relevant period, the UNITED STATES, through the BOP, a federal agency, was in possession and control of FCI Victorville, a minimum-security federal prison camp located in Victorville, California. The UNITED STATES has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

14. Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

15. Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training and other employees, and in reporting incidents of sexual abuse to the BOP.

## INSTITUTIONAL DUTIES UNDER PREA AND BOP POLICY

16. Congress enacted PREA in recognition of the inherent and extreme power imbalance that exists in custodial settings and the resulting impossibility of true consent between correctional staff and incarcerated persons.

17. In prisons, individuals in custody have severely restricted physical liberty and are subjected to the constant authority, supervision, and control of correctional officers. Correctional officers control housing assignments, work placements, access to programming, visitation, commissary privileges, disciplinary charges, and recommendations affecting sentence credits and release dates. Correctional officers may impose punishment, remove privileges, or initiate reports that directly impact an inmate's confinement conditions.

18. Under these conditions, sexual contact between staff and inmates is not a private or equal interaction. Rather, it is the exploitation of custodial authority.

19. By enacting PREA Congress recognized that incarcerated indiviudals are uniquely vulnerable to coercion, grooming, retaliation, and silence, and that the structural power disparity leaves victims with little meaningful ability to refuse, report, or escape abuse.

20. PREA was enacted to establish a zero-tolerance framework, mandate prevention and reporting safeguards, and eliminate the culture that historically permitted staff to exploit those in their custody under the guise of "consent."

21. PREA , 34 U.S.C. § 30301 et seq., and its implementing regulations codified at 28 C.F.R. Part 115 establish mandatory national standards governing the prevention, detection, reporting, investigation, and response to sexual abuse in federal confinement facilities. The Bureau of Prisons ("BOP") is required to comply with these standards at all institutions, including FCI Victorville.

**A. Zero-Tolerance and Prevention Mandate**

22. PREA regulations require the BOP to maintain and enforce a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment. The policy must outline the agency's approach to preventing, detecting, and responding to such conduct.[1]

23. The BOP is required to implement structural and supervisory safeguards sufficient to prevent staff from exploiting inmates through coercion, grooming, isolation, or abuse of authority.[2]

**B. Mandatory Reporting Obligations**

24. PREA regulations require that the BOP "shall require all staff to report immediately" any knowledge, suspicion, or information regarding an incident of sexual abuse, as well as any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.[3]

---

[1] 28 C.F.R. § 115.11(a).
[2] 28 C.F.R. § 115.13(a).
[3] 28 C.F.R. § 115.61(a).

25. Apart from reporting to designated supervisors or officials, staff are prohibited from revealing information related to a sexual abuse report except as necessary, consistent with agency policy, to make treatment, investigative, security, or management decisions.[4]

**C. Immediate Protective Duties**

26. Regardless of whether a formal report has been made, when an inmate is subject to a substantial risk of imminent sexual abuse, BOP employees are required to take immediate action to protect the inmate.[5]

27. This obligation exists independently of any formal complaint and requires proactive intervention when risk is known or obvious.

**D. Investigation and Referral Requirements**

28. Upon receiving a report of inmate sexual abuse, the facility must refer the matter to a designated internal investigator and conduct an administrative or criminal investigation.[6]

29. Allegations that appear to involve potentially criminal behavior must be referred for criminal investigation.[7]

30. All investigations must be documented, and the agency must maintain written reports containing findings and evidence relied upon.[8]

**E. Protection from Retaliation**

31. Because victims and reporters of sexual abuse face heightened risk of retaliation, the BOP is required to protect all inmates and staff who report sexual abuse or cooperate in investigations from retaliation by other inmates or staff.[9]

32. The BOP must designate staff or departments responsible for monitoring retaliation. A facility's PREA compliance manager is required to monitor a victim for at least 90 days following a report to ensure that retaliation

---

[4] *Id.*
[5] 28 C.F.R. § 115.62.
[6] 28 C.F.R. § 115.71(a).
[7] 28 C.F.R. § 115.71(h).
[8] 28 C.F.R. § 115.71(f).
[9] 28 C.F.R. § 115.67(a).

does not occur.[10]

**F. Mental Health Care Obligations**

33. The BOP must provide ongoing access to medical and mental health services for inmates who have been victimized by sexual abuse while in custody.[11]

**G. Training and Documentation Requirements**

34. PREA requires that every employee who may have contact with inmates receive training regarding prevention, detection, reporting, and response to sexual abuse. The agency must document, through employee signature or electronic verification, that employees understand the training received.[12]

35. Specialized training is also required for employees who conduct sexual abuse investigations.[13]

**H. Discipline and Record Retention**

36. Where an investigation substantiates that a staff member engaged in sexual abuse, termination is the presumptive disciplinary sanction, and some form of discipline is required.[14]

37. All documentation relating to allegations of inmate sexual abuse must be securely maintained and retained for at least ten years after the date of initial collection.[15]

38. Despite PREA mandates, correctional officers, especially those at FCI Victorville continue to exploit incarcerated individuals and coerce sexual interaction.

39. Defendants failed to comply with and enforce these mandatory duties. As alleged herein, their failure to implement, monitor, and enforce these PREA

[10] 28 C.F.R. § 115.67(b), (c).
[11] 28 C.F.R. § 115.82(a); *see also* 28 C.F.R. § 115.83(a).
[12] 28 C.F.R. § 115.31(a).; *see also* 28 C.F.R. § 115.31(d).
[13] 28 C.F.R. § 115.34(a).
[14] 28 C.F.R. § 115.76(a).
[15] 28 C.F.R. § 115.87.

obligations allowed the sexual abuse of Plaintiff to occur and continue, and permitted retaliation following her disclosure.

## PATTERN AND PRACTICE OF STAFF SEXUAL MISCONDUCT AT FCI VICTORVILLE

### A. Prior Federal Criminal Prosecution of Staff

40. Upon information and belief, sexual abuse and serious staff misconduct at FCI Victorville was not an isolated incident but part of a longstanding pattern of staff-on-inmate sexual misconduct documented in federal criminal prosecutions, congressional investigations, and federal oversight reports.

41. Federal criminal cases arising from FCI Victorville include, but are not limited to:

a. In or about 2007, correctional officer Noel Bunch engaged in sexual acts with a female inmate incarcerated at FCI Victorville, resulting in federal criminal proceedings.

b. Between 2016 and 2017, correctional officer Apolonio Gamez sexually assaulted two female inmates at FCI Victorville, exposed himself to a third inmate, and attempted to engage in sexual acts with her. In 2019, Gamez pleaded guilty in federal court to two counts of Sexual Abuse of a Ward and one count of Attempted Sexual Abuse of a Ward and was sentenced to a term of imprisonment.[16]

42. These prosecutions involved different officers, different time periods, and separate victims, demonstrating recurring staff sexual misconduct at the same facility.

---

[16] U.S. Attorney's Office, Cent. Dist. of Cal., **Correctional Officer at Federal Prison Facility in Victorville Sentenced to Two Years in Prison** (June 17, 2019), https://www.justice.gov/usao-cdca/pr/correctional-officer-federal-prison-facility-victorville-sentenced-two-years-prison

**B. Congressional Findings Regarding Staff-on-Inmate Misconduct**

43. In December 2022, the United States Senate Permanent Subcommittee on Investigations issued a staff report addressing sexual abuse of female prisoners in BOP custody.

44. The report included facility-specific tables derived from Department of Justice and BOP records identifying annual volumes of "Staff-on-Inmate" cases opened, sustained, administratively closed, or pending at individual institutions, including FCI Victorville.

45. According to the published tables, FCI Victorville reflected the following reported data:

a. 2012: 23 Staff-on-Inmate cases opened; 1 closed sustained; 19 closed not sustained; 3 administratively closed; 0 currently open.

b. 2013: 42 Staff-on-Inmate cases opened; 2 closed sustained; 34 closed not sustained; 6 administratively closed; 0 currently open.

c. 2014: 14 Staff-on-Inmate cases opened; 0 closed sustained; 11 closed not sustained; 0 administratively closed; 3 currently open.

d. 2021: 14 Staff-on-Inmate cases opened; 0 closed sustained; 1 closed not sustained; 1 administratively closed; 12 currently open.[17]

46. These data reflect repeated double-digit annual volumes of staff-on-inmate sexual misconduct investigations at FCI Victorville across multiple years.

47. The reported figures demonstrate a substantial disparity between allegations opened and findings sustained.

**C. Government Accountability Office Findings**

48. In September 2025, the Government Accountability Office ("GAO") issued a report examining employee misconduct within the Bureau of Prisons.

---

[17] Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Governmental Affs., **Sexual Abuse of Female Inmates in Federal Prisons** (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf

49. As part of its review, GAO identified FCC Victorville as one of the ten BOP correctional facilities with the highest number of employee misconduct cases and complaints reported between October 2013 and February 2025.

50. According to GAO's published findings, FCC Victorville accounted for approximately 1,426 employee misconduct cases and 585 complaints during that period, totaling 2,011 reported matters.[18]

51. The inclusion of FCI Victorville among the highest-volume facilities nationwide for employee misconduct over more than a decade reflects persistent and substantial institutional misconduct concerns.

**D. Supervisory Knowledge and Institutional Notice**

52. The repeated criminal prosecutions of correctional staff, congressional findings identifying the facility by name, and GAO reporting concerning misconduct volumes placed supervisory officials on notice of a substantial risk of staff-on-inmate sexual abuse at FCI Victorville.

53. Upon information and belief, supervisory officials at FCI Victorville had access to internal investigative records, disciplinary files, PREA compliance documentation, and misconduct reporting data reflecting recurring allegations of staff sexual misconduct.

54. Despite this notice, supervisory officials failed to implement and enforce adequate safeguards to deter and detect staff sexual abuse, including but not limited to:

a. Continuous and meaningful monitoring of staff-inmate interactions;
b. Strict enforcement of cross-gender supervision limitations;
c. Immediate removal of accused staff from inmate contact;
d. Confidential reporting channels insulated from retaliation;
e. Timely referral of substantiated misconduct for criminal prosecution;

[18] U.S. Gov't Accountability Off., **Bureau of Prisons: Additional Actions Needed to Address Employee Misconduct** (Sept. 2025) at 18-20, https://files.gao.gov/reports/GAO-25-107339/index.html

f. Training that meaningfully addressed coercion and abuse of authority.

55. Upon information and belief, the recurrence of criminal charges against staff at FCC Victorville reflects deficiencies in supervision, monitoring, reporting systems, and enforcement mechanisms.

56. The documented volume of staff-on-inmate investigations, combined with repeated federal prosecutions of staff members, demonstrates that the risk of staff sexual abuse at FCI Victorville was neither speculative nor isolated.

57. As a direct and proximate result of these systemic failures, correctional officers, including Defendant OSORIO, were able to groom, isolate, and sexually exploit inmates without prompt detection or effective intervention.

58. The supervisory failures described herein were a substantial factor in permitting the sexual abuse and coercion of Plaintiff while she was incarcerated at FCI Victorville.

59. Plaintiff is informed and believes and thereon alleges that, at all times relevant herein, each Defendant was the agent, servant, employee, managing agent, and/or supervisor of the remaining Defendants and was acting within the course and scope of such agency and employment.

60. Each Defendant authorized, ratified, condoned, or failed to prevent the unlawful acts alleged herein. Whenever reference is made to any act or omission of any Defendant, such allegation shall be deemed to include the acts and omissions of all Defendants acting individually, jointly, and severally.

## **DEFENDANT OSORIO ROUTINELY SUBJECTED PLAINTIFF TO SEXUAL ABUSE AND HARASSMENT**

61. Plaintiff began serving her sentence at FCI Victorville in or about February 2022. She was a young, first-time criminal offender with no prior history of incarceration. She entered federal custody dependent upon correctional staff for her safety, housing, programming, and release calculations.

62. Shortly after her arrival, Plaintiff was assigned to work at UNICOR. In that position, she was placed under the direct supervision and authority of Correctional Officer OSORIO, who was in his early 30s and exercised custodial power over her daily movements, work status, and disciplinary exposure.

63. Upon information and belief, at the time Plaintiff was assigned to UNICOR, supervisory officials at FCI Victorville were aware of prior allegations and investigations concerning OSORIO's inappropriate relationships with female inmates. Despite this knowledge, OSORIO was permitted continued direct supervisory access to young female prisoners, including Plaintiff.

64. OSORIO began grooming Plaintiff shortly after she came under his supervision. He singled her out for attention, made comments about her physical appearance, and cultivated familiarity under the guise of friendliness. Plaintiff, inexperienced and newly incarcerated, understood that OSORIO controlled her work assignment and could affect her disciplinary record.

65. OSORIO escalated his conduct by providing Plaintiff with contraband items, including underwear and alcohol. These items were prohibited within the institution and placed Plaintiff at risk of discipline. After giving her contraband, OSORIO would ask, "What are you going to do to pay me back?" making clear that the items were not gifts but instruments of leverage and coercion.

66. By approximately January 2023, OSORIO's conduct became overtly sexual and predatory. He initiated sexual conversations, questioned Plaintiff about her sexual history, and asserted his desire to engage in sexual acts with her.

67. Plaintiff was incarcerated, under OSORIO's authority, and wholly dependent on correctional staff for her safety and release status. She understood that refusal could result in discipline, loss of programming, loss of good-time credit, or other retaliation. Under these coercive custodial conditions, she could not and did not consent.

68. OSORIO began removing Plaintiff to areas within FCI Victorville

where he believed surveillance was limited or absent, including the "Hot Room," where institutional keys were stored, and his private office. In those locations, OSORIO sexually assaulted and raped Plaintiff.

69. On at least three occasions, OSORIO placed Plaintiff in his personal vehicle, transported her off prison property without authorization, and took her to his private residence, where he sexually assaulted her.

70. Over a period of months, OSORIO repeatedly forced Plaintiff to engage in sexual acts, including vaginal intercourse, oral sex, and digital penetration. He sexually touched and fondled her on numerous occasions. These acts were accomplished through exploitation of custodial authority, coercion, and implicit and explicit threats tied to Plaintiff's incarceration.

71. OSORIO provided Plaintiff with a cellular phone so that he could maintain secret communication with her outside the presence of other staff. The phone constituted contraband and further increased Plaintiff's vulnerability to discipline and retaliation.

72. OSORIO provided Plaintiff with a cellular phone so that he could maintain secret communication with her outside the presence of other staff. The phone constituted contraband and further increased Plaintiff's vulnerability to discipline and retaliation.

73. Despite these rumors, no reports were made nor was any action taken to protect Plaintiff.

74. Fearing discipline, loss of release credits, and retaliation, Plaintiff begged OSORIO to stop the sexual abuse. She requested reassignment to another job to escape his supervision.

75. OSORIO refused to release her from his control, stating that he did not want her working for anyone else. He maintained authority over her work assignment and continued to isolate her.

76. Around this time, OSORIO admitted to Plaintiff that he had previously

engaged in a sexual relationship with another inmate. He described continuing sexual contact with that inmate after her release and acknowledged that his wife had discovered their communications. He kept the former inmate's identification card in his desk. Upon information and belief, institutional officials were aware of prior allegations involving OSORIO but failed to remove him from inmate supervision.

77. In or about December 2023, Plaintiff was ordered to submit to a pregnancy test. She understood that staff had become aware of OSORIO's conduct but feared disclosing the abuse because of the power OSORIO and other officers exercised over her.

78. Despite the suspicion of abuse by the correctional officers and administrators of FCI Victorville, no reports were made and no action was taken to protect Plaintiff from further abuse.

79. Instead, the next day, correctional officers conducted what Plaintiff later learned was a targeted investigation. Officers aggressively searched her living area, destroyed personal property, and treated her as the wrongdoer rather than a victim.

80. Plaintiff was forced to submit to a strip search and interrogated while naked. During the interrogation, officers mocked and demeaned her, stating she should not be embarrassed because she had "a lot of practice" being naked with guards. They suggested she believed she was "the shit," asked whether she had worked as a stripper, and made derogatory comments about her upbringing. The tone and substance of the interrogation conveyed that she was being blamed for OSORIO's abuse.

81. Eventually, Plaintiff was permitted to dress, but the interrogation continued for approximately four and a half hours. Officers denied her requests for water and a bathroom break. At one point, a Captain conspicuously drank water in front of her and asked whether this was how she intended to "play the game," reinforcing that the process was punitive rather than protective.

82. An officer demanded that Plaintiff provide the password to the

contraband cellular phone that OSORIO had supplied. When Plaintiff hesitated, the officer told her, "No grown man is ever going to leave his wife for a little girl like you," reinforcing the narrative that she was to blame and trivializing the abuse.

83. At approximately 4:30 a.m., Plaintiff was placed in a freezing medical isolation room. She was denied a bedroll. To stay warm, she wrapped her feet in toilet paper and tucked her hands into her shirt.

84. Plaintiff later met with Special Investigative Services ("SIS") officers and agents from the Office of the Inspector General. An SIS officer informed her that the Bureau of Prisons had been investigating OSORIO for a significant period and was aware that he had engaged in inappropriate relationships with other women, including inmates.

85. Broken down and scared, Plaintiff disclosed the sexual assaults. The demeanor of the questioning officers conveyed hostility rather than protection, leading Plaintiff to fear retaliation for telling the truth.

86. After the interrogation, Plaintiff encountered OSORIO. He angrily confronted her and demanded, "What the fuck did you tell them?" demonstrating his continued access to and intimidation of her even after the investigation began.

87. Plaintiff was subsequently transferred to the Metropolitan Detention Center in Los Angeles. There, she was informed that she would lose previously earned good-time credits. Although officials cited possession of a phone and alleged insolence, Plaintiff alleges that the loss of credit and extension of her release date by approximately four months were retaliatory.

88. While at the MDC, Plaintiff experienced her first panic attack during a strip search. Staff members were hostile toward her and referred to her as "a little girl," echoing prior derogatory remarks.

89. Plaintiff was later transferred to the Seattle-Tacoma facility. On her first day, a male lieutenant removed her from her cell and questioned her about the investigation, demanding names and details despite lacking authority to conduct the

inquiry. He did not inquire about her safety or mental health.

90. At no point was Plaintiff offered access to mental health services, as required by PREA, as a victim of sexual abuse.

91. Plaintiff continued to experience retaliation, intimidation, and psychological harm until her release from custody.

92. OSORIO was eventually transferred to another facility and later left his position and was placed on administrative leave.

## FTCA STATUTE OF LIMITATIONS AND ADMINISTRATIVE EXHAUSTION

93. Plaintiff has exhausted these claims against the United States under the FTCA.

94. Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Victorville in the sum of $10,000,000.00.

95. The BOP received her administrative claim on March 4, 2025.

96. Under the FTCA (28 U.S.C. § 2675(a)), if a federal agency fails to issue a final disposition on a claim within six months, a Plaintiff may consider this a final denial of her claim. The BOP has neither accepted nor denied Plaintiff's claim and over six months has passed. Thus, Plaintiff considers this a final denial of her claim such that she may bring her claim in this Court.

## CLAIMS FOR RELIEF

## CLAIM ONE

### EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

**(Against OSORIO and DOES 1-25, inclusive)**

97. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

98. Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against OSORIO and DOES 1-25, inclusive.

99. At all material times, OSORIO and DOES 1-25, inclusive, were federal employees of the BOP at FCI Victorville, acting under the color of federal authority with respect to the allegations in this complaint.

100. OSORIO violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as an inmate at FCI Victorville.

101. OSORIO's sexual abuse of Plaintiff occurred under coercive circumstances.

102. By intentionally subjecting Plaintiff to abusive sexual acts, OSORIO acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification. The inhumane conditions of confinement caused by OSORIO's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

103. OSORIO and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

104. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

105. Plaintiff makes these allegations against DOES 1-25, inclusive.

## CLAIM TWO

**GENDER VIOLENCE (Civ. Code § 52.4)**

**(Against OSORIO and DOES 1-25, inclusive)**

106. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

107. Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against OSORIO and DOES 1-25.

108. Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

109. OSORIO discriminated against Plaintiff based on her female gender when he repeatedly sexually abused her, by subjecting her to sexual acts under the coercive conditions that were present between them.

110. OSORIO's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

111. By repeatedly subjecting Plaintiff to abusive and intrusive sexual acts, OSORIO caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

112. OSORIO acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

113. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

114. These allegations are asserted against DOES 1-25, inclusive.

115. Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

**<u>CLAIM THREE</u>**

**SEXUAL BATTERY (FTCA, Civ. Code § 1708.5)**

**(Against UNITED STATES, OSORIO, and DOES 1-25, inclusive)**

116. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

117. Plaintiff brings this claim for sexual assault under FTCA and California Civil Code § 1708.5 against UNITED STATES and PERP. The UNITED STATES ratified the conduct of OSORIO.

118. OSORIO violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Victorville.

119. OSORIO's sexual abuse of Plaintiff occurred under coercive circumstances.

120. For these reasons, OSORIO's sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

121. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, OSORIO must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

122. Plaintiff did not and could not consent to the touching.

123. By intentionally subjecting Plaintiff to sexual acts, OSORIO acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

124. OSORIO's actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

125. By repeatedly subjecting Plaintiff to sexual acts, OSORIO caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

126. OSORIO acted with malice and oppression, and her conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

127. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

128. All these allegations are asserted against DOES 1-25, inclusive.

## CLAIM FOUR

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(FTCA, California common law)**

**(Against UNITED STATES, OSORIO, and DOES 1-25, inclusive)**

129. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

130. Plaintiff brings this claim for intentional infliction of emotional distress under FTCA / California common law against UNITED STATES and PERP. The UNITED STATES ratified the conduct of OSORIO.

131. OSORIO engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual abuse while she was incarcerated as an inmate in his employer's custody. OSORIO abused his authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as

atrocious and utterly intolerable in a civilized society.

132. Plaintiff did not and could not consent to the touching by OSORIO.

133. OSORIO's sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

134. OSORIO intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from her sexual manipulation and violent abuse of an inmate.

135. OSORIO's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

136. OSORIO acted with malice and oppression, entitling Plaintiff to punitive damages.

137. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

138. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM FIVE

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## (FTCA, California common law)

## (Against UNITED STATES, OSORIO, and DOES 1-25, inclusive)

139. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

140. Plaintiff brings this claim against the UNITED STATES, OSORIO, and

DOES 1-25, inclusive, under the FTCA based on the actions and/or omissions of UNITED STATES, OSORIO, and DOES 1-25, inclusive, which were taken while working at FCI Victorville in their capacity as employees of the BOP and acting within the scope of their employment, with United States' permission and consent.

141. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Victorville.

142. **Duty**. UNITED STATES, OSORIO, and DOES 1-25, inclusive, had a special, heightened, custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

143. **Breach of duty—inadequate supervision**. The UNITED STATES and DOES 1-25, inclusive, failed to supervise and operate FCI Victorville in a manner that would have prevented OSORIO's ongoing sexual abuse of Plaintiff.

144. The UNITED STATES did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

145. OSORIO's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the UNITED STATES and DOES 1-25.

146. **Injuries and relief sought**. UNITED STATES, OSORIO, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

147. Plaintiff's emotional reaction was not an abnormal response to her

sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

148. By reason of the UNITED STATES and OSORIO's negligent infliction of emotional distress, Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

149. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

150. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SIX

### BATTERY (FTCA, California common law)

### (Against UNITED STATES, OSORIO, and DOES 1-25, inclusive)

151. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

152. Plaintiff brings this claim for battery under FTCA and California common law against UNITED STATES and OSORIO. The UNITED STATES ratified the conduct of OSORIO.

153. OSORIO committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Victorville.

154. OSORIO's sexual abuse of Plaintiff occurred under coercive circumstances.

155. For these reasons, OSORIO's sexual abuse of Plaintiff, an inmate in the

custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

156. Given the deeply offensive nature of these acts and lack of any possible penological justification for these acts, OSORIO must have subjected Plaintiff to these acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

157. By intentionally subjecting Plaintiff to sexual abuse, OSORIO acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

158. OSORIO's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse and physical violence, that he could not have been making a policy judgment in his decision to abuse Plaintiff.

159. By repeatedly subjecting Plaintiff to sexual abuse, OSORIO caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

160. OSORIO acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

161. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (only against individuals).

162. These allegations are asserted against DOES 1-25, inclusive.

**CLAIM SEVEN**

**EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT**

**(Against OSORIO and DOES 1-25, inclusive)**

163. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

164. Plaintiff brings this claim against OSORIO and DOES 1-25, inclusive, under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

165. At all material times, OSORIO and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

166. OSORIO and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse by OSORIO, by acting in conscious disregard of that known risk.

167. Prior to Plaintiff's sexual abuse, DOES 1-25 had knowledge of prior abuses occurring at FCI Victorville and did nothing to stop it, including failing to conduct an investigation, among other things. DOES 1-25 had a legal duty to investigate complaints of abuse. Despite knowledge of abuse, DOES 1-25 did not investigate any of the complaints. This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff. DOES 1-25 consciously allowed inmates, including Plaintiff, to be abused.

168. Based on his position and behavior in the prison, DOES 1-25 knew or should have known that OSORIO was abusing Plaintiff.

169. DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from OSORIO, in violation of 28 C.F.R. § 115.62.

170. OSORIO and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

171. OSORIO and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

172. OSORIO and DOES 1-25 purposefully denied Plaintiff protection from the known and substantial risk of serious harm of sexual abuse.

173. OSORIO's and DOES 1-25's inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

174. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM EIGHT

**NEGLIGENCE (FTCA, California common law)**

**(Against the UNITED STATES, OSORIO, and DOES 1-25, inclusive)**

175. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

176. Plaintiff brings this claim against the UNITED STATES, OSORIO, and DOES 1-25 under the FTCA and California common law based on the actions and/or omissions of UNITED STATES, OSORIO, and DOES 1-25, inclusive, taken while working at FCI Victorville in their capacities as employees of the BOP and acting

within the scope of their employment, with the permission and consent of the UNITED STATES.

177. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the UNITED STATES in possession and control of FCI Victorville.

178. **Duty**. UNITED STATES, OSORIO, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the UNITED STATES from foreseeable harm, including, but not limited to, harm from sexual abuse.

179. The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

180. Alternatively, UNITED STATES, OSORIO, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

181. OSORIO's sexual abuse of Plaintiff was reasonably foreseeable to the UNITED STATES because OSORIO's conduct made it obvious he was sexually and physically abusing Plaintiff.

182. **Breach of duty—inadequate supervision**. The UNITED STATES and DOES 1-25 failed to supervise and operate FCI Victorville in a manner that would have prevented OSORIO's ongoing sexual abuse of Plaintiff.

183. The UNITED STATES did not take reasonable, available measures to abate the risk of abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

184. OSORIO's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the UNITED STATES and DOES

1-25.

185. **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

186. Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Nominal damages in an amount to be determined at trial;
2. Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;
3. Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights (except against United States);
4. An award to Plaintiff of reasonable costs; and
5. An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6. Such other and further relief as the Court may deem fit and proper.

Respectfully Submitted,

Dated: February 20, 2026

**THE PRIDE LAW FIRM**

/s/ Sophia Rebecca-Marie

Jessica K. Pride
Sophia Rebecca-Marie
Email: jpride@pridelawfirm.com; Sophia@pridelawfirm.com
Attorneys for Plaintiff